IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| GOLDEN FLAMES BANQUET & BALLROOM, INC., a corporation, | * * * | |
| Plaintiff, | * * | |
| v. | * * | CIVIL ACTION NO.: 1:20-cv-312 |
| THE CINCINNATI INSURANCE COMPANY, a corporation, | * * * | |
| Defendant. | * * | |

**CLASS ACTION COMPLAINT**

Plaintiff Golden Flames Banquet & Ballroom, Inc., brings the following Complaint against Defendant The Cincinnati Insurance Company:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Golden Flames Banquet & Ballroom, Inc. ("Golden Flames" or "Plaintiff"), is a corporation organized under the laws of the State of Alabama, with its principal place of business located in Alabama.

2. Defendant The Cincinnati Insurance Company ("Cincinnati" or "Defendant") is a corporation organized under the laws of the State of Ohio, with its principal place of business located in Ohio.

3. This Court has subject-matter jurisdiction of this class action pursuant to 28 U.S.C. § 1332(d)(2)(A), because the matter in controversy, the aggregated claims of the members of the proposed Class, exceeds the sum of five million dollars, exclusive of interest and costs, and Plaintiff, a member of the proposed Class, is a citizen of a state different from Cincinnati; pursuant to 28 U.S.C. § 1332(d)(4)(A)(II)(cc), in that the only Defendant is not a citizen of the state in

which this action has been filed; and pursuant to 28 U.S.C. § 1332(d)(5), in that the proposed Class has more than 100 members.

4. Venue is proper in the Southern District of Alabama pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims asserted occurred in this judicial district. Venue is also proper in the Southern District of Alabama pursuant to 28 U.S.C. § 1391(b)(1), in that the Defendant, Cincinnati, is deemed to reside in this judicial district pursuant to 28 U.S.C. § 1391(d). Defendant has purposefully conducted and continues to purposefully conduct substantial business in this judicial district.

## FACTUAL BACKGROUND

5. Plaintiff Golden Flames owns and operates a banquet and special-events (such as weddings, wedding receptions, balls, and retirement parties) facility in Mobile, Alabama.

6. Cincinnati issued Golden Flames a commercial property insurance policy, with a policy period of February 22, 2019, to February 22, 2022, bearing policy number EPP0525621.

7. Cincinnati's policy is an all-risk policy that insures against all risks of direct, accidental physical loss or damage unless the loss or damage is specifically excluded by the policy.

8. Cincinnati's policy has the following coverage form, among others: Building and Personal Property Coverage Form (Including Special Causes of Loss) No. FM1010516. A copy of Cincinnati's policy is attached hereto as Exhibit A.

9. Plaintiff's Building and Personal Property Coverage Form (Including Special Causes of Loss) provides as follows:

> **SECTION A. COVERAGE**
>
> We will pay for direct "loss" to Covered Property at the "premises" caused by or resulting from any Covered Cause of Loss.

Exh. A, Coverage Form No. FM1010516, p. 3.

10. This Coverage Form also contained the following Coverage Extension:

> **b. Business Income and Extra Expense**
>
> . . . .
>
> **(1) Business Income**
>
> We will pay for the actual loss of "business Income" and "Rental Value" you sustain due to the necessary "suspension of your "operations" during the "period of restoration." The "suspension" must be caused by direct "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss. . . .

Exh. A, Coverage Form No. FM1010516, p. 18.

11. The policy defines "premises" as "Locations and Buildings described in the Declarations." This is Plaintiff's banquet and special-events facility.

Exh. A, Coverage Form No. FM1010516, p. 39.

12. With respect to what constitutes Covered Causes of Loss, the Building and Personal Property Coverage Form (Including Special Causes of Loss) provides:

> **3. Covered Causes of Loss**
>
> **a. Covered Causes of Loss**
>
> Covered Causes of Loss means direct "loss" unless the "loss" is excluded or limited in this Coverage Part.

Exh. A, Coverage Form No. FM1010516, p. 5.

13. "Loss" is defined as "accidental physical loss or accidental physical damage."

Exh. A, Coverage Form No. FM1010516, p. 38.

14. The governmental orders described below are not excluded or limited in Cincinnati's policy.

15. The State of Alabama, the United States, and the world are in the midst of the novel coronavirus pandemic. The virus causes the viral illness known as COVID-19. The virus is extremely contagious. To date, Alabama has had over 18,000 coronavirus cases and over 600 of those people have died.

16. On March 13, 2020, Donald J. Trump, the President of the United States, declared the COVID-19 pandemic a National Emergency.

17. Also on March 13, 2020, Kay Ivey, Governor of the State of Alabama, declared the COVID-19 pandemic a State Public Health Emergency. Gov. Ivey directed the appropriate state agencies to exercise their statutory and regulatory authority accordingly.

18. On March 27, 2020, Dr. Scott Harris, the Alabama State Health Officer, entered a Statewide Order which provided, among other things, that effective March 28, 2020, at 5:00 PM., all adult entertainment venues were closed and all eating establishments were closed for the on-premises consumption of food and drink. A copy of Dr. Harris's Order is attached hereto as Exhibit B. Golden Flames shut down completely in accordance with the Order. Because Golden Flames' business model is not compatible with take out or delivery of meals, it could not avail itself of those limited options.

19. On May 8, 2020, Dr. Harris entered a Statewide Order allowing food-service establishments to resume on-premises consumption of food and drink, but with no more than eight people at a table, at least six feet of separation between people seated at different locations, and a six-foot social-distancing requirement for persons not seated. Adult entertainment venues remained closed. A copy of Dr. Harris's Order is attached hereto as Exhibit C.

20. On May 21, 2020, Dr. Harris entered a Statewide Order allowing adult-entertainment venues to reopen on May 22, 2020, at 5:00 PM, but with occupancy limited to 50%

of the normal occupancy load, and with a six-foot social-distancing requirement between people from different households. A copy of Dr. Harris's Order is attached hereto as Exhibit D.

21. Golden Flames has reopened under Dr. Harris's restrictive reopening requirements. Golden Flames has lost business income due to those requirements, because it does not have the full use of its business premises.

22. The aforesaid orders of Gov. Ivey and Dr. Harris were valid exercises of the government's executive police power.

23. Golden Flames has suffered a substantial loss of business income due to the shutdown, and submitted a claim for the loss to Cincinnati under the business-income provision of Golden Flames' insurance policy. Golden Flames furnished documents and information requested by Cincinnati, purportedly to evaluate the claim. Cincinnati denied Golden Flames' claim in a letter dated May 21, 2020. A copy of the letter is attached as Exhibit E. In the letter, Cincinnati said there had been no direct physical loss or damage to Plaintiff's business premises.[1]

24. As addressed above, Cincinnati's business-income coverage form insures against Golden Flames' loss of business income because of direct, accidental physical loss or damage to Golden Flames' business premises caused by a Covered Cause of Loss. The State Health Officer's March 27 Order was a Covered Cause of Loss because it was not specifically excluded under Cincinnati's all-risk coverage form.

25. Golden Flames sustained a direct physical loss to its business premises, because the State Health Officer issued an order that shut Golden Flames' business down completely. There was a direct physical loss to Golden Flames' business premises because its business premises were rendered physically unusable for their intended purpose. The loss was direct because Dr. Harris's

---

[1] Cincinnati did not mention the policy's definition of a "loss" as "accidental."

Order was expressly directed to categories of businesses to which Plaintiff belongs, and because the Order was the direct cause of Plaintiff's loss of the use of its business premises. Similarly, Golden Flames has suffered a direct physical loss to its business premises under Dr. Harris's restrictive reopening requirements, to the extent that it cannot physically use all of its premises as it could before Dr. Harris's March 27, 2020, Order.

26. As for the "accidental" requirement, "accidental" is defined as "occurring unexpectedly or by chance." *Merriam-Webster.com/dictionary*. For insurance purposes, whether an occurrence is accidental is determined from the viewpoint of the insured. From Golden Flames' viewpoint, the entry of the various governmental shutdown orders occurred unexpectedly or by chance. The entire coronavirus pandemic occurred unexpectedly or by chance. Whether and when governmental orders imposing or modifying a shutdown would be entered, and what they would provide, were unexpected from Golden Flames' viewpoint because such orders and their contents depended on the status of the pandemic, which was a matter of chance, and upon the opinions of the State Health Officer, which were unknown to Golden Flames.

27. Cincinnati also denied Golden Flames' claim based on a pollution exclusion which provides that Cincinnati will not pay for loss caused by or resulting from the following:

> **(l) Pollutants**
>
> Discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" unless the discharge, dispersal, seepage, migration, release, escape or emission is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" results in a "specified cause of loss", we will pay for the "loss" caused by that "specified cause of loss".

Exh. A, Coverage Form No. FM1010516, p. 10.

28. The policy defines "pollutants" as follows:

> **12.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, asbestos, chemicals, petroleum, petroleum products and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property, or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" . . . .

Exh. A, Coverage Form No. FM1010516, p. 39.

29. The exclusion is inapplicable because an illness-causing virus is not an "irritant" or "contaminant." At best, the exclusion is ambiguous in this regard, which means it must be construed to not include an illness-causing virus and to allow coverage. Finally, the exclusion is limited to industrial pollutants, which means there is coverage in this case.

30. Cincinnati also denied coverage under the policy's Civil Authority Coverage, but Plaintiff does not make a claim under that coverage.

31. Based upon the foregoing, there is coverage for Golden Flames' claim.

32. Based on Plaintiff's counsel's knowledge, information, and belief, Cincinnati is routinely denying its insureds' claims made under its policies' business-income coverage, which arise out of the COVID-19 pandemic and report that governmental orders closed their businesses to the public or restricted their on-premises business operations. The denials routinely state that there is no coverage because there was no direct physical loss or damage to property.

## **CLASS ACTION ALLEGATIONS**

33. This action is brought as a plaintiffs' class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3). Plaintiff brings this action on its own behalf, and on behalf of all others in the State of Alabama similarly situated, as representative of the following Class:

> All businesses in the State of Alabama that were issued insurance
>
> policies by The Cincinnati Insurance Company ("Cincinnati") with

> Building and Personal Property Coverage Form (Including Special Causes of Loss) No. FM101051, whose policies were in effect on and after March 27, 2020, which businesses had their on-premises business operations shut down to the public or restricted by the Alabama State Health Officer's Order of March 27, 2020, who filed claims for lost business income after that date under Coverage Form No. FM101051, and whose claims were denied by Cincinnati because there was allegedly no coverage under the policy.
>
> Excluded from the Class are all businesses whose policies have an endorsement specifically excluding coverage for loss or damage caused by, resulting from, or relating to a "virus."
>
> Further excluded from the Class are (1) the officers, directors, and employees of Cincinnati, and its affiliated entities; and (2) all judicial officers of the United States who preside over or hear this case, and all persons related to them as specified in 28 U.S.C. § 455(b)(5).

34. The members of the Class are readily identifiable from Cincinnati's books and records.

35. Upon information and belief, the Class consists of hundreds and possibly thousands of members, and therefore is so numerous that individual joinder of all members is impracticable. The members of the Class are geographically dispersed throughout the State of Alabama.

36. There are questions of law and fact common to Class, which predominate over any questions affecting only individual members of the Class. The questions common to the Class include, but are not limited to, the following:

(a) Does Coverage Form No. FM101051 cover loss of business income ultimately caused by COVID-19?

(b) Does Coverage Form No. FM101051 cover loss of business income directly caused by the orders of the governmental authorities that shut down or restricted access to the Class members' businesses?

(c) Is it a breach of Cincinnati's contractual obligations under the policies for it to deny the Class members' claims for lost business income under Coverage Form No. FM101051, for lack of coverage under the policies?

(d) What is the meaning of the policy provision "direct physical loss or damage to" property?

37. Plaintiff's claims are typical of those of the Class and are based on the same legal theories as those of the members of the Class. Plaintiff's claims and those of the Class members all arise from the same pattern of conduct or practice by Cincinnati, as set out above.

38. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel who are highly experienced and competent in class-action litigation and other complex litigation, and who are knowledgeable regarding the applicable law. Plaintiff and its counsel intend to prosecute this action vigorously. Neither Plaintiff nor its counsel have any interests that might cause them not to vigorously pursue this action. Plaintiff's interests are coextensive with those of the Class, and Plaintiff has no interests adverse to those of the Class members.

39. Plaintiff has made arrangements with its counsel for the discharge of its financial responsibility to the Class. Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action.

40. A class action is superior to all other available means for the fair and efficient adjudication of this controversy, and it is desirable to concentrate the litigation of the claims in this forum. The damages suffered by many Class members are relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Cincinnati. Moreover, many of the Class members are unlikely to be aware of their rights. Therefore, it is unlikely that these Class members, on an individual basis, can obtain effective redress for the wrongs done to them.

41. Additionally, the court system would be adversely affected by such individualized litigation. Individualized litigation would create the danger of inconsistent judgments arising from the same set of facts. Individualized litigation would also increase delay and expense to all parties and the court system from the issues raised by this action. In contrast, the class-action device provides the benefit of adjudication of these issues in a single proceeding, with economies of scale and comprehensive supervision by a single court.

42. Plaintiff and its counsel are aware of no litigation concerning the controversy already begun by or against members of the Class. This also indicates that the Class members' interest in individually controlling the prosecution of separate actions is minimal.

43. Plaintiff does not anticipate any likely difficulties in the management of this action as a class action.

44. Cincinnati has acted or refused to act on grounds that apply generally to the Class, as specified above, so that corresponding declaratory relief is appropriate respecting the Class as a whole.

## COUNT I
## DECLARATORY JUDGMENT

Plaintiff alleges as follows against Cincinnati, on its own behalf and on behalf of the members of the Class, pursuant to Federal Rule of Civil Procedure 23(b)(2) and 28 U.S.C § 2201:

45. Plaintiff realleges Paragraphs 1 through 44 hereof.

46. There is an actual, substantial, and justiciable controversy between Plaintiff and the Class members on the one hand, and Cincinnati on the other, regarding whether Plaintiff and the Class members' losses of business income and any extra expenses are covered losses under the coverage form specified above.

47. A judgment declaring the rights of Plaintiff and the Class members will serve a useful purpose in settling and clarifying the legal relations at issue, and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this request for a declaratory judgment.

48. Plaintiff and the Class members are entitled to a judgment declaring that their losses of business income and any extra expenses are covered losses under the specified coverage form.

## COUNT II
## BREACH OF CONTRACT

Plaintiff alleges as follows against Cincinnati, on its own behalf and on behalf of the members of the Class, pursuant to Federal Rule of Civil Procedure 23(b)(3):

49. Plaintiff realleges Paragraphs 1 through 44 hereof.

50. There are valid contracts of insurance binding Plaintiff and the Class members on the one hand and Cincinnati on the other.

51. Plaintiff and the Class members have performed their obligations under the contracts of insurance. Plaintiff and the Class members have paid their premiums and have filed claims with Cincinnati for their lost business income.

52. Cincinnati has not performed its obligations under the insurance contracts, in that it has denied coverage for Plaintiff's and the Class members' losses of business income when those losses are covered losses under the coverage form specified above.

53. Plaintiff and the Class members have been damaged by Cincinnati's denial of coverage in the amount of their lost business income.

54. Plaintiff and the Class members are entitled to a judgment against Cincinnati in the amount of their lost business income and any extra expenses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff individually, and on behalf of the members of the Class, asks that the Court:

(a) Certify the Class proposed herein;

(b) Appoint Plaintiff as representative of the Class;

(c) Appoint Plaintiff's counsel as attorneys for the Class;

(d) Declare the rights of Plaintiff and the Class as follows: declare that Plaintiff's and the Class members' losses of business income and any extra expenses are covered losses under the specified coverage form.

(e) Enter judgment awarding Plaintiff and the Class members monetary damages for Cincinnati's breach of their insurance contracts, in the amount of their lost business income and any extra expenses;

(f) Award Plaintiff and the Class members prejudgment interest and post-judgment interest as provided by law;

(g) Award Plaintiff and the Class members a reasonable attorney's fee and the costs of this action; and

(h) Provide such further relief as may be just and proper.

## JURY DEMAND

Plaintiff, on behalf of itself and the members of the Class, demands a trial by jury on all issues so triable.

Dated: June 9, 2020

        Respectfully submitted,

        By: */s/ Richard H. Taylor*_____
        RICHARD H. TALYOR (TAYLR8925)

        By: */s/ W. Lloyd Copeland*_____
        W. LLOYD COPELAND (COPW3831)

        By: */s/ Steven A. Martino*_____
        STEVEN A. MARTINO (MARS7433)
        P.O. Box 894
        Mobile, Alabama 36601
        Phone: (251) 433-3131
        Fax:   (251) 433-4207
        Email: richard@taylormartino.com
               lloyd@taylormartino.com
               stevemartino@taylormartino.com

        **ATTORNEYS FOR PLAINTIFF AND THE PROPOSED CLASS**

**OF COUNSEL:**
John W. "Don" Barrett (pro hac vice application to be filed)
BARRETT LAW GROUP, P.A.
404 Court Square North
Lexington, Mississippi
Phone: (662) 834-9168
Fax:   (662) 834-2628
Email: donbarrettpa@gmail.com

**DEFENDANT TO BE SERVED BY CERTIFIED MAIL:**

The Cincinnati Insurance Company
c/o Scott Tyra, Agent for Service of Process
Park Place Tower
2001 Park Place North, Suite 200
Birmingham, Alabama 35203